

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

THERESA R. THOMPSON

     Plaintiff

     v.

OHIO UNIVERSITY

     Defendant

Case No. 2011-07354-AD

Deputy Clerk Daniel R. Borchert

MEMORANDUM DECISION


{¶1} Plaintiff, Theresa R. Thompson, alleged that from December 31, 2006, the date she purchased her 2003 Chevrolet Silverado, she parked her vehicle in Lot 145 located near the Lausche Heating Plant on the campus of Ohio University ("OU") in Athens, Ohio. In the late summer, early fall of 2010, she "noticed spots on the paint of my truck." Plaintiff surmised that the damage to her vehicle was caused by emissions from the Lausche Heating Plant. Plaintiff related when the spots could not be "polished out" she took her vehicle to McGrath Paint and Body who advised her the spots were caused by emissions from the Heating Plant. Accordingly, plaintiff contended that the damage to her vehicle was the responsibility of defendant. She has consequently filed this complaint seeking to recover $6,259.82, the cost of repainting her vehicle. Plaintiff submitted the filing fee. Plaintiff acknowledged that she carries insurance coverage with Hartford Exchange which has a $500.00 deductible. Therefore, pursuant to the statutory directives of R.C. 2743.02(D) and R.C. 3345.40(B)(2), plaintiff's damage claim

shall be limited to her insurance deductible, plus filing fee reimbursement.[1]

{¶2} The plaintiff submitted the affidavit of Jeffrey Welch, a Building Maintenance Specialist who has worked for Ohio University Maintenance for the past 29 years. Mr. Welch related he has been paid twice by defendant for damage to the paint of his 1997 Toyota pickup and his 1999 Ford-F-150 pickup as the result of emissions emanating from defendant's Heating Plant. Mr. Welch also stated that a payment of damage to his 1999 Ford F-150 contained the following notation: "DP230806.1206 Damage to Automobile from Smoke Stack While Parked at OU Property." Furthermore, Mr. Welch has observed similar damage to his 2008 Toyota FJ Cruiser and the state of Ohio's 2008 Ford F-150 by April of 2009.

---

[1] R.C. 2743.02(D) states:

"(D) Recoveries against the state shall be reduced by the aggregate of insurance proceeds, disability award, or other collateral recovery received by the claimant. This division does not apply to civil actions in the court of claims against a state university or college under the circumstances described in section 3345.40 of the Revised Code. The collateral benefits provisions of division (B)(2) of that section apply under those circumstances."

R.C. 3345.40(B)(2) states:

"(B) Notwithstanding any other provisions of the Revised Code or rules of a court to the contrary, in an action against a state university or college to recover damages for injury, death, or loss to persons or property caused by an act or omission of the state university or college itself, by an act or omission of any trustee, officer, or employee of the state university or college while acting within the scope of his employment or official responsibilities, or by an act or omission of any other person authorized to act on behalf of the state university or college that occurred while he was engaged in activities at the request or direction, or for the benefit, of the state university or college, the following rules apply:

"(2) If a plaintiff receives or is entitled to receive benefits for injuries or loss allegedly incurred from a policy or policies of insurance or any other source, the benefits shall be disclosed to the court, and the amount of the benefits shall be deducted from any award against the state university or college recovered by the plaintiff. No insurer or other person is entitled to bring a civil action under a subrogation provision in an insurance or other contract against a state university or college with respect to such benefits.

"Nothing in this division affects or shall be construed to limit the rights of a beneficiary under a life insurance policy or the rights of sureties under fidelity or surety bonds."

{¶3}   Plaintiff also submitted an affidavit from Keith McGrath, owner and operator of McGrath Paint & Body for the last 26 years who stated based on his training and experience it was his opinion that the paint damage to the plaintiff's 2003 Chevrolet Silverado was "caused by material(s) emitted from the Laushe coal-fire plant."

{¶4}   Plaintiff included a list of claims paid by defendant OU as the result of smoke stack damage.  The list contains 197 claims filed for automotive damage "from Smoke Stack."  Payments were made from July 29, 2003 until May 21, 2007, however the document does not identify when the damage occurred.

{¶5}   Defendant filed an investigation report admitting that prior to 2003 the "Lausche plant used a precipitator to scrub its flue gas and particulate from the coal fired boilers before it left the stack."  This process caused damage to employee vehicles which resulted in OU paying claims for paint damage.  However, in October 2003, "the Lausche Plant installed a new baghouse flue gas cleaning system that scrubs its flue gas and particulate from the coal fired boilers."  Defendant asserted that this new system resolved any potential damage to employee vehicles as a result of the emissions.  Finally, defendant contends the last damage claim was resolved in 2006, the year the plaintiff purchased her truck.

{¶6}   Defendant asserted that in order to prevail, the plaintiff "must prove the existence of (a) nuisance . . . [a]nd she must prove actual and substantial damages caused by such a nuisance."  The defendant contended that plaintiff has failed to meet her requisite burden  of proof.  Defendant insisted that plaintiff failed to allege any specific duty that OU owed to plaintiff and failed to prove that OU did not use reasonable care in the operation of the Lausche Heating Plant.

{¶7}    Defendant noted that the plant met all the requirements set forth by the Ohio Environmental Protection Agency ("OEPA").  Furthermore, "[t]he Lausche plant at OU has complied with applicable state and federal laws relative to the operations of a coal-fired plant."  The plaintiff failed to establish that defendant had an actual or constructive notice that there were any problems with the emissions from the plant after the 2003 renovations to the plant.  Consequently, the plaintiff is unable to prove that emissions proximately caused the damage to her truck.

{¶8}    The plaintiff has offered no expert who can connect the damage caused to plaintiff's truck with emissions from OU's heating plant.  The plaintiff's reliance on the opinion of Keith McGrath, "an auto body and automotive paint repair man" is misplaced.  A review of his affidavit revealed that there is nothing contained in the affidavit which "qualifies him as an expert on coal-fired plant emissions."  The mere fact that he repairs vehicles does not allow him to make a causal connection between the damage to plaintiff's vehicle and emissions from OU's heating plant.

{¶9}    Finally, plaintiff has failed to prove her damages and her damages are subject to the limitations of her insurance deductible.  However, since plaintiff pronounced that she intends to trade her truck in, a review of the Kelly Blue Book revealed the difference between a truck the same year and make as plaintiff's truck in excellent condition as opposed to very good condition amounts to $150.00.

{¶10} Defendant submitted the affidavit of Clyde Pierce, Assistant Director of Maintenance and Operations for Utilities and Trades at OU for the past three years and former Chief Engineer for the OU Lausche Plant for 12 years prior.  Mr. Pierce related that prior to 2003 "the Lausche Plant used a precipitator to scrub its flue gas and

particulate from the coal fired boilers before it left the stack." Mr. Pierce admits that this process "possibly caused damage to" vehicles for which OU agreed to settle with owners of those vehicles. However, "[i]n October of 2003, the Lausche Plant installed a new baghouse flue gas cleaning system that scrubs its flue gas and particulate from the coal fired boilers." Since the installation of this new system "any potential issue of damage to vehicles parking in the vicinity of the Lausche Plant" has been "resolved." Mr. Pierce attests that the Lausche Plant is in compliance with all EPA and OEPA requirements. Finally, Mr. Pierce revealed that he parks his vehicle in the same lot as the plaintiff and his "vehicle has not been damaged by emissions from the Lausche Plant."

{¶11} Defendant submitted the affidavit of Jamie Childers, a paralegal employed by the Ohio Attorney General's Office, who visually inspected plaintiffs' truck on June 18, 2012. Ms. Childers observed no damage to plaintiff's vehicle "other than what appeared to be rust at the base of the truck and directly above the wheel (Attachment 1-j through 1-m), as well as damage to the running boards attached to the truck (Attachment 1-j through 1-l and 1-t). Ms. Childers' assessment was "[o]ther than the rust, the body of the truck appeared to be in excellent condition." Ms. Childers supplied a series of photographs of the plaintiff's truck with the affidavit. (A review of these photographs reveals that the truck appears to be in excellent condition without any noticeable damage to the painted surfaces.)

{¶12} Finally, the defendant provided the affidavit of Daniel J. Canter, an Environmental Specialist in the Division of Air Pollution Control Section of the Ohio Environmental Protection Agency. Mr. Canter's job duties include "performing

inspections of air emission sources and ensuring compliance with EPA air emission standards." Mr. Canter related that as part of his duties he has inspected the Lausche Plant since 1992. He was well aware of the change to a new baghouse flue system in 2003. He also stated that:

{¶13} "[t]he Lausche Plant stack is designed to propel any ash particulate a considerable distance from the plant. The height of the stack along with the exit velocity of the plume work together to disperse the plume or reduce the concentration of particulate emission over distance. The farther the plume travels, the less concentrated it becomes. Stack height and exit velocity also decrease the likelihood of particulate fallout in the immediate area. Thus, due to engineering design and air dispersion, cars parked in close proximity to the plant are less likely to be exposed to any plant emissions."

{¶14} Furthermore, Mr. Canter stated that:

{¶15} "[t]he only way to determine if damage to the paint on a vehicle has been caused by ash from a coal-fired plant is to test the damaged paint of the vehicle. The material would have to be sent to a lab for analysis since other substances can also cause such damage. However, even if such testing determines that a vehicle's paint had been damaged by coal ash, the damage could not be linked to a particular coal plant without knowing the exact date, time and place of exposure."

{¶16} Finally, Mr. Canter attested that any damage to plaintiff's vehicle would have to be pinpointed to the Lausche Plant. However, he noted, "[t]here are coal-fired power plants scattered throughout the country, as well as in the southern Ohio area, including the Gavin Power Plant and Kiger Creek in Gallia County, the paper mill in

Ross County, and several in Washington County."

{¶17}  In conclusion, defendant argued that plaintiff's claim should be denied since, "she cannot prove that OU acted negligently in operating and renovating the Lausche Plant, nor can she prove that the Lausche Plant was the proximate cause to the damage she claims her truck sustained.  In fact, OU has always met the Ohio EPA standards and voluntarily underwent renovations which reduced emissions of the plant.  OU has acted reasonably in its maintenance of the Lausche Plant, and has done so in accordance with industry standards and all applicable rules and regulations.  There is simply no evidence to the contrary."

{¶18}  Plaintiff did not file a response to defendant's investigation report.

{¶19}  Nuisance is a "distinct civil wrong consisting of anything wrongfully done which interferes with or annoys another in the enjoyment of his legal rights."  *Taylor v. Cincinnati*, 143 Ohio St. 426, 436, 55 N.E. 2d 724 (1994).  Under Ohio law, a nuisance has been classified as one of the following:  (1) an absolute nuisance, which imposes strict liability, or (2) a qualified nuisance, which depends on proof of negligence.  *Taylor* at paragraphs two and three of the syllabus.  In *Metzger v. Pennsylvania, Ohio & Detroit RR Co.*, 146 Ohio St. 406, 66 N.E. 2d 203 (1946), paragraphs one and two of the syllabus declared:

{¶20}  "1.    An absolute nuisance, or nuisance *per se*, consists of either a culpable and intentional act resulting in harm, or an act involving culpable and unlawful conduct, causing unintentional harm, or a nonculpable act resulting in accidental harm, for which, because of the hazards involved, absolute liability attaches notwithstanding the absence of fault.

{¶21} "2.     A qualified nuisance, or nuisance dependent on negligence, consists of an act lawfully but so negligently or carelessly done as to create a potential and unreasonable risk of harm, which in due course results in an injury to another."

{¶22} Nothing in the instant claim has supported any contention that the operation of the power plant could be classified as an absolute nuisance.   At best plaintiff's arguments are based on defendant maintaining a qualified nuisance.  Under a claim of qualified nuisance, the allegations of nuisance merge to become a negligence action.  *Allen Freight Lines, Inc. v. Consol. Rail Corp.*, 64 Ohio St. 3d 274, 595 N.E. 2d 855 (1992).

{¶23} In order for plaintiff to prevail upon her claim of negligence, she must prove, by a preponderance of the evidence, that defendant owed her a duty, that it breached that duty, and that the breach proximately caused her injuries.  *Armstrong v. Best Buy Company, Inc.,* 99 Ohio St. 3d 79, 2003-Ohio-2573,788 N.E. 2d 1088, ¶8 citing *Menifee v. Ohio Welding Products, Inc.,* 15 Ohio St. 3d 75, 77, 472 N.E. 2d 707 (1984).  Plaintiff claimed her truck was damaged by emissions from OU's heating plant.  As a necessary element of his particular claim, plaintiff was required to prove proximate cause of her damage by a preponderance of the evidence.   See e.g., *Stinson v. England*, 69 Ohio St. 3d 451, 1994-Ohio-35, 633 N.E. 2d 532.  This court, as trier of fact, determines questions of proximate causation.  *Shinaver v. Szymanski*, 14 Ohio St. 3d 51, 471 N.E. 2d 477 (1984).

{¶24} "If an injury is the natural and probable consequence of a negligent act and it is such as should have been foreseen in the light of all the attending circumstances, the injury is then the proximate result of the negligence.   It is not

necessary that the defendant should have anticipated the particular injury. It is sufficient that his act is likely to result in an injury to someone." *Cascone v. Herb Kay Co.*, 6 Ohio St. 3d 155, 160, 451 N.E. 2d 815 (1983), quoting *Neff Lumber Co. v. First National Bank of St. Clairsville, Admr.*, 122 Ohio St. 302, 309, 171 N.E. 327 (1930). In a situation such as the instant claim, expert testimony is required regarding the issue of causation and that testimony must be expressed in terms of probability. *Stinson*, at 454. In the case at bar, nothing in the statement submitted from the repairman Keith McGrath or the statement of Jeffrey Welch provides evidence that the damage attributable to plaintiff's truck was the result of any negligence on the part of defendant.

{¶25} In order to recover against a defendant in a tort action, plaintiff must produce evidence which furnishes a reasonable basis for sustaining her claim. If her evidence furnishes a basis for only a guess, among different possibilities, as to any essential issue in the case, she fails to sustain the burden as to such issue. *Landon v. Lee Motors, Inc.*, 161 Ohio St. 82, 118 N.E. 2d 147 (1954).

{¶26} Plaintiff has failed to establish the paint damage to her vehicle was caused by smokestack emissions at defendant's heating plant. Plaintiff has not produced a qualified expert report stating her property damage was caused by emissions emanating from defendant's plant. In order to prevail on her nuisance claim, plaintiff has to prove a nuisance existed and she must prove actual damages were caused by the nuisance. See *Eller v. Koehler*, 68 Ohio St. 51, 67 N.E. 89 (1903). Plaintiff has not met her burden of proof. Consequently, her claim is denied.

[Cite as *Thompson v. Ohio Univ.*, 2013-Ohio-5917.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

THERESA R. THOMPSON

     Plaintiff

     v.

OHIO UNIVERSITY

     Defendant

Case No. 2011-07354-AD

Deputy Clerk Daniel R. Borchert

## ENTRY OF ADMINISTRATIVE DETERMINATION

Having considered all the evidence in the claim file and, for the reasons set forth in the memorandum decision filed concurrently herewith, judgment is rendered in favor of defendant. Court costs are assessed against plaintiff.

_____
DANIEL R. BORCHERT
Deputy Clerk

Entry cc:

Theresa R. Thompson
5188 College Street
Albany, Ohio 45710

Velda K. Hofacker
Assistant Attorney General
Court of Claims Defense Section
150 East Gay Street, 18th Floor

Columbus, Ohio  43215

DRB/laa
filed 4/4/13
sent to S.C. Reporter 1/30/14